Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3462 | **DATE** | 12/13/2002 |
| **CASE TITLE** | Linda Hert vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The Commissioner's motion for summary judgment [20-1] is granted, the Claimant's motion for summary judgment [19-1] is denied, and the Commissioner's decision finding Claimant not disabled is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 1 — | 20 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/13/2002 | |
| DK | courtroom deputy's initials | 02 DEC 13 PM 5:08 | date mailed notice DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA HERT, ) | |
| ) | |
| Plaintiff, ) | No. 02 C 3462 |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Hert ("Claimant" or "Hert") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne Barnhart ("Commissioner"), denying Hert's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, Titles II and XVI, 42 U.S.C. §§ 416, 423, 1381a. Hert claims the Commissioner's decision should be reversed because the Administrative Law Judge, John Mondi ("ALJ"), did not properly analyze the findings of the consulting psychologist, his determination of Hert's credibility was improper, and he failed to properly consider Hert's limitations on standing. Both parties now move for summary judgment. For the reasons stated herein, this Court affirms the Commissioner's decision, denies Hert's motion for summary judgment, and grants the Commissioner's motion for summary judgment.

## I. RELEVANT FACTS

### A. Hert's Hearing Testimony

On May 22, 2001, Hert testified before the ALJ at a Social Security Administration ("SSA") Hearing. R. 37-78. At the time of the hearing, Hert was 34 years old and lived with her parents and 14-year-old daughter. R. 38, 51. She graduated from high school and completed one year of vocational college. R. 38. Hert last worked for two full months, answering phones for Naperville Jeep. R. 40. She was terminated on November 4, 1999, due to a reorganization and received unemployment compensation. R. 40-41. Although she looked for part-time employment as a receptionist, she was unemployed at the time of the hearing. R. 39, 41. Her past employment experience included work as a receptionist, telemarketer, insurance verifier and mail room clerk. R. 38, 79.

Hert testified that she has been unable to work since November 4, 1999, because of pain in her back, right shoulder, neck, legs and numbness in her toes. R. 46. Hert first injured her back while working as a mail room clerk for Wilton Industries. R. 45. Although some heavy lifting was required at that job, she worked full-time from January 1992 through January 1996. R. 45, 122. Hert had her first back surgery in June 1993. R. 45. Because pain persisted after work hardening and physical therapy, Hert changed doctors and had a diskogram which revealed further back trouble. R. 45.

In July 1994, Hert had a metal cage surgically placed in her lower back. R. 45. During the procedure Hert tore her right rotator cuff. R. 45. The shoulder surgery and physical therapy delayed the back physical therapy, and her sciatica continued to worsen. R. 46.

Hert left Wilton and received workers compensation. R. 43. In September 1996, Hert began to work at Colar Dodge but was let go two months later. R. 43. Auto Auction in Bolingbrook temporarily hired her to replace an employee on maternity leave in December 1996. R. 43. That job required standing, sitting and walking up and down stairs. R. 43. She was let go in July 1997. R. 43. Hert received six months of unemployment. R. 43. Subsequent to the expiration of the unemployment, Hert worked as a telemarketer for Colorado Prime and a verification clerk for Americall. R. 41, 42, 44. She worked at Americall for fourteen months but found it increasingly difficult to sit for extended hours and eventually left to work at Naperville Jeep in September 1999. R. 42. After two months, Hert was let go due to internal reorganization. R. 42.

### B. Medical Evidence

#### 1. First Surgery

Claimant injured her back while lifting mail at work in 1993. R. 187. She underwent conservative treatment and after diagnostic testing in 1993 revealed a herniated disc, Claimant underwent a decompressive lumbar microdiskectomy. R. 188, 191-93, 229-30, 255, 300. She improved significantly post-operatively, but later developed pain when she returned to work and lifted heavy boxes. R. 262. Subsequent diagnostic testing revealed disc bulging

3

at L3-L4, but Dr. George E. DePhillips felt the disc bulge was not causing pain and reported surgery was not indicated. R. 267, 303-04. Dr. DePhillips released Claimant to return to work on regular duty as of January 1994. R. 307.

In May 1994, Claimant began seeing Dr. Scott D. Hodges, Chief of Spine Surgery at Loyola University Medical Center. His physical examination of Claimant was essentially normal. R. 528-30. Claimant reported chronic disabling back pain since she returned to full duty work, lifting 40-50 pounds on a repetitive basis. R. 528. Despite Dr. Hodges' conclusion Claimant could continue working at her present job without surgery, he reported that she was likely to "spiral downward if her problem was not addressed appropriately." R. 531.

### 2. Second Surgery

Claimant elected to undergo a second surgery in July 1994, followed by physical therapy and work hardening. R. 398, 408-58, 524. She underwent an anterior lumbar diskectomy at L4-L5, and a spiral fusion at L4-L5. R. 312-14. Two weeks later, Claimant was "doing really quite well." R. 516. In January 1995, Claimant underwent right shoulder arthroscopy with repair of the rotator cuff which was injured during the spinal fusion surgery. R. 469-72.

In June 1995, Claimant underwent a functional capacity assessment in which she demonstrated the ability to lift 20 pounds occasionally at all three levels of lifting. R. 544. Claimant was able to sit for eight hours with no apparent limitations, stand for three to four

4

hours and for 30 minutes at one time, and walk for seven hours. R. 544, 546-47. Claimant was able to occasionally bend and stoop. R. 546. Dr. Lorenz released Claimant to work with a permanent 20 pound lifting restriction. R. 555. He otherwise regarded her capabilities as consistent with the June 1995 functional capacity assessment. R. 553-54.

In July 1997, Claimant was seen for intermittent pain in her right leg. R. 561. She was diagnosed with an acute lumbosacral sprain, with "some worsening radiculopathy, now resolving." *Id.* Claimant returned to work and worked until November 1999, when she was fired. R. 110.

### 3. Consulting Exams

In March 2000, Dr. Ram Mukunda examined Claimant on a consultative basis for SSA. R. 563-65. Claimant reported pain for the past several years, but she was working until November 1999 as a secretary. R. 563. Physical examination revealed no joint abnormalities in Claimant's arms, and tenderness in her right shoulder. R. 564. Claimant had no joint inflammation in her legs, no paraspinal muscle spasm in her lower back, and normal reflexes and strength. R. 564-65.

In May and June 2000, state agency physicians reviewed the record and concluded Claimant could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk for six hours each in an eight-hour workday. R. 566-73. The physicians noted that Claimant's "complaints of pain are way out of proportion to actual findings of limitations." R. 572.

### 4. Psychological Exam

Because Claimant alleged depression, the ALJ referred her to Dr. William N. Hilger, a psychologist, for an assessment. R. 594-99. Claimant did not exhibit any pain behavior but claimed she could only sit for no more than two hours. R. 594. Dr. Hilger noted a "minimal" and at times "questionable" effort by Claimant who left the first appointment prematurely claiming her back was hurting. *Id.* Dr. Hilger concluded that his test results provided "minimal and questionable estimates" of Claimant's mental functioning due to her "questionable effort." *Id.* On emotional testing, Claimant's MMPI scores "produced an extremely exaggerated profile," with Claimant "willing to endorse as much symtomatology as possible and produced a very exaggerated, malingering type of profile that could not be reliably interpreted." R. 597. Dr. Hilger diagnosed a somatoform pain disorder, dysthmic disorder and possible malingering disorder with exaggeration of symptomatology. R. 598. He concluded Claimant "appears capable of performing lighter duty clerical tasks." R. 599. Dr. Hilger concluded Claimant had slight or no limitations in most areas of functioning, with moderate limitations in her ability to interact with the public, co-workers and supervisors, and ability to respond to work pressures. R. 600-01. The form Dr. Hilger completed defined moderate as: "[t]here is moderate limitation in this area but the individual is still able to function satisfactorily." R. 600.

## C. Vocational Expert Testimony

The VE, Cheryl Hoiseth, testified Claimant's past relevant work was unskilled and ranged from sedentary to medium exertional level. R. 79. Her receptionist job at Naperville Jeep and her telemarketing job were sedentary work, her mail room job was medium work and her insurance verifier job was light work. R. 79. The ALJ asked the VE a hypothetical question regarding whether a person of Claimant's age, education, and experience, could perform any of Claimant's past relevant work, given the following limitations: able to lift ten pounds, sit, and stand and walk for six hours in an eight-hour workday, unable to climb ropes, ladders or scaffolds, and occasionally climb ramps and stairs. R. 80. The VE testified that such a person could perform Claimant's past relevant work as a telemarketer and receptionist. *Id.* The VE testified that if the person was required to alternate every half hour between sitting and standing, all work would be precluded because, "45 minutes is generally the cut off point." R. 81. The VE also testified that if Claimant's testimony regarding her inability to bend or stoop, comfortably lift more than a laundry basket, or go out alone were true, then all work was precluded. *Id.*

## II. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g), which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v.*

*Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. Of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support his findings. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, n.1 (1992). The Act gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISABILITY STANDARD

In order to be entitled to DIB under Title II of the SSA or to qualify for SSI under Title XVI of the SSA the claimant must establish a "disability"as defined by the SSA. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1).

A five step evaluation must be performed to determine whether a claimant is disabled. 20 CFR § 404.1520(a). The sequential process ends if the ALJ, at any step in the process, finds that the claimant is not disabled. *Id.*

> The ALJ must inquire: 1) whether the claimant is still working; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) if the claimant does not suffer from a listed impairment, whether [s]he can perform past relevant work; and 5) whether the claimant is capable of performing any work in the national economy.

*Greer v. Barnhart*, 201 F. Supp. 2d 897, 903 (N.D. Ill. 2002) (citing 20 CFR § 404.1520). In order to determine whether the claimant can perform any past relevant work (at step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). § 404.1520(e). An individual's RFC is defined as the most that individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. 20 CFR § 404.1545.

## IV. ANALYSIS

The issues presented are: 1) whether the ALJ erred in his treatment of Dr. Hilger's psychological report, specifically the diagnosis of somatoform disorder and the ALJ's assessment; 2) whether the ALJ erred in his analysis of Hert's credibility; and 3) whether the ALJ failed to incorporate a limitation on prolonged standing.

A.  **The ALJ Properly Applied Dr. Hilger's Report.**

1. **The ALJ properly analyzed Dr. Hilger's diagnosis of somatoform and applied the symptoms and effects in determining Hert's RFC.**

Dr. Hilger diagnosed Claimant with a somatoform disorder and found that she had "moderate" limitations in her ability to interact appropriately with the public, interact with supervisors, and respond to work pressures. R. 601. The ALJ carefully evaluated Dr. Hilger's report. The mere diagnosis of a somatoform disorder does not end the inquiry. One must also evaluate the severity of the impairment. Despite the diagnosis of a somatoform disorder, Dr. Hilger found that Claimant had no or slight limitations in all areas except for moderate limitations in her ability to interact with the public and supervisors and in response to work pressure. R. 601-02. Moderate was defined on the form as "there is moderate limitation in this area but the individual is still able to function satisfactorily." R. 600.[1] Given the definition of moderate on the form, the ALJ reasonably found that Claimant's mental limitations did not impose an additional vocational impact.

Claimant's reliance on *Parks v. Sullivan*, 766 F.Supp. 627 (N. D. Ill. 1991) is misplaced. In *Parks*, the district court reversed an ALJ's decision and ordered an award of benefits where the Claimant was diagnosed with a somatoform disorder. In *Parks*, three psychiatrists and one psychologist agreed that Claimant has a mental condition that causes

---

[1] In contrast, a "marked" limitation involves an "ability to function which is severely limited but not precluded" and an extreme limitation involves "no useful ability to function in this area." R. 600. Dr. Hilger found no marked or extreme limitations.

10

her to feel real pain. *Id.* at 635. One doctor found that she was physically unable to perform simple tasks and another found that her physical/mental status would make it difficult for her to perform in a work setting. *Id.* at 635-36. The ALJ's opinion failed to address the "overwhelming psychiatric and psychological findings that [Claimant] is experiencing real pain that would render her unable to perform physically in a work environment." *Id.* at 637. In addition there was no medical diagnosis of malingering or feigning of pain. *Id.*

In contrast, Dr. Hilger concluded that despite his diagnosis of a somatoform pain disorder, "she appears capable of performing lighter duty clerical tasks as long as she would not have to sit for extended periods of time." R. 599. He diagnosed her with a "possible malingering disorder with exaggeration of symptamology." R. 598. The ALJ fairly analyzed the impact of the somatoform pain disorder on Claimant's ability to perform past work.

## B. The ALJ's Credibility Finding Was Properly Explained

In the face of this overwhelming medical evidence, Claimant requests this Court to reverse and remand the ALJ's decision based on the ALJ's credibility finding which the Claimant contends does not comport with Social Security Ruling 96-7p and the Seventh Circuit decision in *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001) and other similar cases.

### 1. SSR 96-7p

SSR 96-7p is a policy interpretation ruling which became effective on July 2, 1996. It addresses the ALJ's responsibility in making a credibility finding regarding a claimant's statements about pain or other symptoms and its functional effects. In particular, this policy interpretation ruling makes clear that:

> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

SSR 96-7p requires the ALJ to consider the claimant's "statements about symptoms with the rest of the relevant evidence in the case record" and to consider the entire case record, including objective medical evidence, and other relevant evidence in coming to a credibility determination. SSR 96-7p ¶¶ 1-4. This SSR essentially requires an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 245 F.3d 863, 872 (7th Cir. 2000).

2. **Zurawski v. Halter**

In *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001), the Seventh Circuit reversed and remanded a case were the ALJ found the Claimant's complaints of disabling pain "not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities." *Id.* at 887. In *Zurawski*, the Court noted that the ALJ confined her discussion to the medical evidence which showed claimant capable of returning to work, but did not include a discussion of the medical evidence showing claimant had a bulging disc and degenerative disc disease which only one doctor had considered, and that claimant had epidural injections and was prescribed medications to alleviate pain and depression. *Id.* at 888. The Court held that the ALJ's decision was deficient because "we are unable to tell whether the ALJ investigated 'all avenues' that relate to [Claimant's] complaints of pain because her decision offers no clue as to whether she *examined* the full

range of medical evidence as it relates to his claim." *Id.* Because of the incompleteness of the analysis, the Court remanded the case for greater elaboration in order to "conduct a reevaluation of Zurawski's complaints of pain with due regard for the full range of medical evidence." *Id.*

### 3. The ALJ's Credibility Determination Was Made With Due Regard to the Full Range of Medical Evidence.

The ALJ found Claimant had significant limitations based upon credible evidence, which included the opinion of her treating physician, the observations of Dr. Hilger and two state agency physicians. R. 18. Claimant cites no objective medical evidence that supports that she is disabled.

Moreover, the ALJ considered appropriate factors and evidence in evaluating Claimant's subjective complaints. R. 18. First, he noted the physician opinion evidence and reasonably adopted the limitations identified by Claimant's treating physician. R. 18. The ALJ also noted that Claimant's use of medication, and her inconsistent pursuit of treatment even after she returned to work in 1997 undermined the credibility of her subjective complaints. R. 18. While Claimant notes her testimony that she didn't see a physician after July 14, 1997, because she lacked insurance, Claimant ignores her testimony that she was only "was going to go back to him one other time." R. 74. Moreover, Claimant's earnings record indicates significant earnings in 1997, 1998, and 1999, in contrast to her earnings in 1995 and 1996. R. 110. Thus, Claimant was able to earn money despite her alleged disabling impairments. Thus, it was reasonable for the ALJ to consider Claimant's inconsistent

13

treatment history since returning to work. R. 18. In February 2001, the treatment note indicates that Claimant was seen because she was out of pain medication since the end of December 2000. R. 585. Given the degree of pain Claimant alleged, the ALJ reasonably concluded that her use of medication was inconsistent with those allegations.

Finally, the ALJ noted Dr. Hilger's reports of Claimant's exaggerating and malingering. R. 18, 594, 597. Although Claimant suggests that Dr. Hilger merely suggested a diagnosis of malingering, in contrast to a diagnosed somataform disorder, Dr. Hilger's report is replete with references to Claimant's lack of effort, "extremely exaggerated profile," and Claimant's "willingness to endorse as much symptomatology as possible." R. 594, 597. Dr. Hilger's evaluation clearly supports the ALJ's conclusion.

Substantial evidence supports the ALJ's credibility assessment. Claimant disagrees. However, because the ALJ is in the best position to observe a witness, his credibility determination should not be disturbed unless it has no support in the record or is patently wrong. See *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)("We have repeatedly stated that an ALJ's credibility determination will not be disturbed unless it is patently wrong."); *Heron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)("Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong.") An ALJ's credibility determination is sufficient if it allows a reviewing court to "track the ALJ's reasoning and be assured that the ALJ considered the important evidence." *Diaz*, 55 F.3d at 308.

## C. The ALJ Properly Incorporated The Alleged Limitation On Hert's Ability To Stand.

Claimant's emphasis on her purported inability to stand more than one half hour at a time is misplaced because, it simply does not impact on her ability to perform past work. The same functional capacity evaluation that indicated Claimant could not stand more than 30 minutes at one time, also indicated Claimant could walk for seven hours in an eight-hour workday, and could sit without limitation. R. 546-47. The VE's testimony makes clear that it is only a requirement that Claimant be allowed to alternate between sitting and standing every thirty minutes that would render her incapable of performing any of her past jobs. R. 81. However, no physician of record, and indeed, Claimant's own testimony, fails to support that limitation.

## VI. CONCLUSION

The ALJ's decision finds substantial support in the record. The treating physician, the state agency physicians and the examining psychologist all found Claimant capable of returning to work. The ALJ's decision provides a roadmap to his reasoning and the record fully supports the ALJ's conclusions. For the reasons set forth in this opinion, **the Commissioner's motion for summary judgment is granted, the Claimant's motion for summary judgment is denied, and the Commissioner's decision finding Claimant not disabled is affirmed.**

SO ORDERED THIS 13th DAY OF DECEMBER, 2002.

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed To:**

M. Jacqueline Walther
Kielian and Walther
33 West Jackson Boulevard
Suite 201
Chicago, IL 60604
Counsel for Plaintiff

Curt P. Marceille
Special Assistant U. S. Attorney
200 West Adams St.
30th Floor
Chicago, IL 60602
Counsel for Defendant